## HOOE v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 13.    Argued October 25, 26, 1910.—Decided November 28, 1910.

Congress, proceeding under the Constitution, declares what amount shall be drawn from the Treasury in pursuance of an appropriation.

Heads of departments cannot by express or implied contract render the Government liable for an amount in excess of that expressly appropriated by Congress for the subject-matter of the contract.

A claim against the United States for a specific amount of money which is not expressly or by necessary implication authorized by a valid enactment of Congress cannot be said to be founded on the Constitution.

When an officer of the United States takes or uses private property without authority of law he creates no condition under which the Government is liable by reason of its constitutional duty to make compensation. If private property has been taken or used by an officer of the United States without authority of law the remedy is not with the courts but with Congress alone.

A claim for such compensation does not rest on the Constitution, and as an unauthorized act of the officer does not create a claim against the United States, the Court of Claims has no jurisdiction thereof under the Tucker Act of March 3, 1887, c. 359, 24 Stat. 505.

One renting a building to a department of the Government and receiving the entire appropriation for rent for such department has no claim against the Government for any amount in excess of the appropriation, even though he demands more and though he expressly excepts a part of the building from the lease and the department actually occupies the part reserved, nor has the Court of Claims jurisdiction of such a claim as one arising under the provision of the Constitution that private property shall not be taken without compensation.

43 C. Cl. 245, affirmed.

THE facts, which involve the validity of a claim for rent of premises occupied by a department of the United States, the power of an officer of the United States to make contracts in excess of amount appropriated by Congress, and the jurisdiction of the Court of Claims, are stated in the opinion.

*Mr. L. T. Michener,* with whom *Mr. W. W. Dudley* and *Mr. P. G. Michener* were on the brief, for appellants:

The Government of the United States has the absolute power to take private property for public use, just compensation being made. The Secretary of the Interior and the Civil Service Commissioners were and are officers of the United States, charged with the performance of official duties. The United States acted by and through them. The actions of the Secretary are not to be regarded as his personal acts but as the acts of the Government. *United States* v. *Lynah,* 188 U. S. 465, 466.

The House and Senate were fully informed as to what the Secretary of the Interior and the Commission had done.

There is ample legislative authority for all that was done. Act of January 16, 1883, § 4, 22 Stat. 403, makes it the duty of the Secretary to provide suitable and convenient accommodations for the Commission and he could speak and act through his subordinates or through the officials of the Commission. *Parish* v. *United States,* 100 U. S. 504; *McElrath* v. *United States,* 102 U. S. 436; *McCollum's Case,* 17 C. Cl. 101, 102.

The United States, by its agents, proceeding under the authority of an act of Congress, took appellants' property for public uses, and it thereby became obligated, by virtue of the Constitution, to make just compensation, and this action lies for the value of the use and occupancy of their property. *United States* v. *Great Falls Mfg. Co.,* 112 U. S. 645, 656; *Great Falls Mfg. Co.* v. *United States,* 124 U. S. 581, 597; *Monongahela Nav. Co.* v. *United States,* 148 U. S. 312, 324; *United States* v. *Lynah,* 188 U. S. 445, 460.

Neither the language of the general appropriation acts nor of §§ 3679 and 3732, Rev. Stat., nor of the acts of June 22, 1874, 18 Stat. L. 144, and March 3, 1877, 19 Stat. L. 370, bars recovery. No act of Congress can defeat or nullify the obligation contained in the Fifth Amendment.

An appropriation act fixes the amount to be paid by the Government in a certain fiscal year, but it does not strike to earth a constitutional obligation by failing to provide enough money to discharge that obligation. *Shipman's Case,* 18 C. Cl. 138, 147; *Graham's Case,* 1 C. Cl. 381; *Collins' Case,* 15 C. Cl. 22, 35; *Briggs' Case,* 15 C. Cl. 48; *Parsons' Case,* 15 C. Cl. 246.

When an act authorizes the officer to do a particular thing without restriction as to cost, and an inadequate appropriation is made, and the same thing done inures to the benefit of the Government, or is accepted by the proper public officers, an action will lie for the reasonable value thereof. *Shipman's Case,* 18 C. Cl. 138, 146; *Freedman's Bank Case,* 16 C. Cl. 19, 29.

The statutes quoted by the court below which prohibit the making of express contracts, apply to officials and not to citizens, and do not apply to those cases or legal rights which arise from the acts of public officers with reference to property in carrying on the business of the Government entrusted to them. *N. Y. C. & H. R. R. R. Case,* 21 C. Cl. 468, 472; *Semmes & Barber Case,* 26 C. Cl. 129; *Rives' Case,* 28 C. Cl. 249; *Smoot's Case,* 38 C. Cl. 418, 427.

Act of January 16, 1883, is a special or particular act, and is an exception to general acts. *Rodgers* v. *United States,* 185 U. S. 83, 87–89; *Ex parte Crow Dog,* 109 U. S. 556, 570; *N. Y. C. & H. R. R. R. Case,* 21 C. Cl. 468; § 3732, Rev. Stat.; see also *McCollum's Case,* 17 C. Cl. 92; *Shipman's Case,* 18 C. Cl. 147; *Dougherty's Case,* 18 C. Cl. 503; *Beaman's Case,* 19 C. Cl. 9.

Where there is no express contract for the use of property in present occupation by the Government, the obligation to make just compensation is fixed by the Fifth Amendment, and it attaches *eo instanti*. *Semmes & Barber Case,* 26 C. Cl. 119.

The obligation to make compensation is constitutional

and does not depend on a contract made by an officer. *United States* v. *Great Falls Mfg. Co.*, 112 U. S. 645, 656; *Great Falls Mfg. Co.* v. *Attorney-General*, 124 U. S. 581, 597; *United States* v. *Russell*, 13 Wall. 623, 627, 630; *Bauman* v. *Ross*, 167 U. S. 548, 574; *Monongahela Nav. Co.* v. *United States*, 148 U. S. 327.

The Secretary of the Interior had no power to make an implied contract with owners of this property. Section 3744, Rev. Stat.; *Clark* v. *United States*, 95 U. S. 539, 541; *South Boston Iron Co.* v. *United States*, 118 U. S. 37, 42.

*Mr. Assistant Attorney-General John Q. Thompson*, with whom *Mr. Charles F. Kincheloe* was on the brief, for the United States.

The occupation and use of the basement was a tort, for which there was no right of recovery. It was done without authority. The Government is not liable for unauthorized acts of its officers or agents. *Bank of United States* v. *Owens*, 2 Pet. 527, 539; *Johnson* v. *United States*, 5 Mason, 441; *Hunter* v. *United States*, 5 Pet. 173, 187; *Gibbons* v. *United States*, 8 Wall. 269, 274; *Filor* v. *United States*, 9 Wall. 45, 48; *Whiteside* v. *United States*, 93 U. S. 247, 256.

Individuals as well as courts must take notice of the extent of authority conferred by law upon a person acting in an official capacity, and the rule applies in such a case that ignorance of the law furnishes no excuse for any mistake or wrongful act. *Hart* v. *United States*, 95 U. S. 316, 318; *Hawkins* v. *United States*, 96 U. S. 689, 691; *Langford* v. *United States*, 101 U. S. 341; *Moffatt* v. *United States*, 112 U. S. 24, 31; *Camp* v. *United States*, 113 U. S. 648, 653; *German Bank* v. *United States*, 148 U. S. 573, 579; *Hume* v. *United States*, 132 U. S. 406, 414. This bars recovery in cases founded upon the Constitution, as well as cases based upon implied contract, independent of the Constitution. *Hill* v. *United States*,

149 U. S. 593, 597; *Schillinger* v. *United States*, 155 U. S.
163; *Bigby* v. *United States*, 188 U. S. 400, 407, distin-
guishing *United States* v. *Russell*, 13 Wall. 623; *United
States* v. *Great Falls Mfg. Co.*, 112 U. S. 645; *The Lynah
Case*, 188 U. S. 445; and a decision sustaining this de-
mand would place any executive officer of the Government
above Congress and the law in the important function
of the expenditure of governmental funds for public
purposes; and if there were no other defense, the petition
should be dismissed on the ground that a construction
of the law and judgment in favor of the appellants would
be against public policy. Page on Contracts, § 326;
*Randall* v. *Howard*, 2 Black, 585; *Hannay* v. *Eve*, 3 Cr.
242; *Woodstock Iron Co.* v. *Exten. Co.*, 129 U. S. 643;
*Gibbs* v. *Gas Co.*, 130 U. S. 408.

No implied obligation for additional rent could arise
as the rate of rent that could be paid for quarters for the
Commission was expressly limited by law to the amounts
appropriated by Congress and paid the appellants.

Receipt of payment, without protest, is conclusive
against a claim for additional pay, and there can be no
recovery of additional rent even if it should be held that
the tenancy was under implied contract, entirely inde-
pendent of the express contracts, instead of a hold-over
tenancy, under the terms and conditions of the preceding
express contracts. *United States* v. *Childs*, 12 Wall. 232;
*Francis* v. *United States*, 96 U. S. 354, 359; *Murphy* v.
*United States*, 104 U. S. 464; *De Arnaud* v. *United States*,
151 U. S. 483; *Garlinger* v. *United States*, 169 U. S. 316,
322; *Chicago, Mil. & St. P. Ry. Co.* v. *Clark*, 178 U. S.
353, 368; *Newman* v. *United States*, 81 Fed. Rep. 122.


MR. JUSTICE HARLAN delivered the opinion of the court.

The appellants, plaintiffs below, seek to recover from
the United States the sum of $9,000, the amount, which

they allege, is due them on account of the occupation and use, by the Civil Service Commission, of certain premises in the city of Washington, District of Columbia.

The finding of fact by the Court of Claims—using largely the words of the finding—may be summarized as follows:

On the tenth day of July, 1900, the Secretary of the Interior, proceeding under the appropriation act for the legislative, executive and judicial expenses of the Government for the fiscal year ending June 30th, 1901 (act of April 17, 1900, 31 Stat. 125, c. 192), made a written agreement with plaintiffs for the leasing and renting to the Government for the use of the Civil Service Commission, of a certain building on E and Eighth streets, in Washington, "except the basement thereof," for the period commencing August 1st, 1900 and ending June 30th, 1901, at the rate of $333.33$\frac{1}{3}$ per month, or $4,000 for the year—the right being reserved to the Government to terminate the lease, after thirty days' written notice at the end of any calendar month.

The Commission on August 1st, 1900, took possession and remained in exclusive possession of the building, including its basement, until the bringing of this suit. The amount appropriated by Congress for the rent of offices for the Commission for the year ending June 30th, 1901, was $4,000, one-twelfth of which was expended for such rent for July, 1900.

On the third of March, 1901, Congress appropriated for the rent of quarters for the Commission the sum of $4,000 for the fiscal year ending June 30th, 1902. 31 Stat. 1000–1, c. 830, March 3, 1901. The Secretary of the Interior, shortly after the beginning of that year, proposed to the plaintiffs a renewal of the lease for that year. But the plaintiffs expressed their unwillingness "to rent the said building for another year at the rate of $4,000 per annum," or to rent the entire building, including the basement, then occupied by the Commission,

at a rental less than $6,000 per annum. Without further action, on either side, "the defendants continued in possession of said building and basement during said year, paying," however, to the plaintiffs $4,000, the rent specified in the lease for the first year, to wit, $4,000.

In his estimates submitted for appropriations by Congress for the fiscal year ending June 30th, 1903, the Secretary named $6,000 "for rent of quarters for the Civil Service Commission." As the general legislative, executive and judicial appropriation bill for that year did not, as it passed the House of Representatives, include that sum, the plaintiffs' agent, in writing, informed the chief clerk of the Interior Department that unless the Senate fixed the rent at $6,000 the plaintiffs would ask possession of the property at the earliest convenient time. Of this attitude of the plaintiffs the Senate was informed by plaintiffs' agent. He appeared before the House Committee on Appropriations, and by the Secretary of the Interior transmitted the letter of plaintiffs to the Senate Committee on Appropriations. Congress, however, *refused to increase the appropriation to* $6,000, and for the fiscal year ending June 30th, 1903, appropriated "for rent of buildings for the Department of the Interior, namely, . . . For . . . Civil Service Commission, four thousand dollars." 32 Stat. 162, Pt. 1, c. 594, April 28, 1902. No further action was taken by either party in relation to an increase of rent or the demanding of possession, and the United States continued in possession of the property, including the basement, for that fiscal year, paying rent at the rate of $4,000 per year. Although the Secretary of the Interior estimated an increase of $2,000 for quarters of the Civil Service Commission for the fiscal year ending June 30th, 1904, Congress appropriated only $4,500. 32 Stat. 854, Pt. 1, c. 755, February 25, 1903. In consequence of this increase the Secretary sought to rent from the plaintiffs all the "build-

ing and premises for the use of the Civil Service Commission for the sum of $4,500 appropriated," but plaintiffs refused to do that. The Secretary finally, August 18th, 1903, made a lease from claimants for all of said building, "except the basement," for the fiscal year ending June 30th, 1904, at the rate of $4,500 per year.

For the fiscal year ending June 30th, 1905, Congress, March 18th, 1904, appropriated $4,500 for the rent of quarters for the Commission. 33 Stat. 85, Pt. 1, c. 716, March 18, 1904. In accordance with that appropriation the Secretary proposed to the plaintiffs, in writing, to renew the lease of August 18th, 1903, for the fiscal year ending June 30th, 1905, at the rate of $4,500 per annum. The plaintiffs took no action on this proposal, except to write to the Secretary requesting that the basement of the building, which had not been included in either of the leases to the Government, be included "in the lease at the rate of 30 cents per square foot for its floor space." Neither party took any further steps in reference to the renewal of the lease or for an increase of rental for the fiscal year ending June 30th, 1905, and the claimants were paid rent for that year at the rate of $4,500 as provided by the appropriation and as specified in the lease for the preceding year. A like appropriation of $4,500 was made for rent of quarters for the Commission for the fiscal year 1906, and that body, without any express renewal of the lease for that year, continued in occupation of the entire building, up to August 1st, 1905, for which the claimants have been paid at the rate of $4,500 per year.

The Court of Claims further found: "Although the claimants never rented to the Government for the use of the Civil Service Commission, or for any other purpose, that part of the basement of said building not occupied by heating and elevator plants and equipment thereof, yet the Civil Service Commission took possession of this portion of said basement and has continually oc-

cupied and used the same from the 1st day of August, 1900, until the bringing of this action, August 1, 1905;" and in a letter to the Acting Secretary of the Interior, dated November 28, 1904, relative to the matter of a renewal of the Government's lease for the building for that fiscal year, the claimants, among other things, called attention to the fact that the basement of the building was then fully occupied by the Civil Service Commission. The fair rental value of that portion of the basement occupied and used as aforesaid was $400 per year; and the rental value of the entire building, including the basement, was not less than $6,000 per year. "During the time that the defendants have occupied and used said building and basement belonging to the claimants, *the claimants have receipted for rent for the same in full*, except for the basement, which has been specially excluded from each of said receipts given by the claimants. With the exception of this exclusion of the basement from said receipts, it does not appear that any other protest was ever made by the claimants that said payments were not in full for the rent legally due to them for said building. The claimants, however, repeatedly insisted that the defendants were not paying enough rent for said building, and on one occasion asked for extra rent for said basement, as heretofore found."

The court below directed the petition to be dismissed and judgment to be entered for the Government. That was accordingly done.

The pleadings and facts indicate that the claim of the appellants is divided into two parts; one, arising out of the occupancy and use by the Civil Service Commission of the building above the basement; the other, for the occupancy and use by that body of the basement.

Let us, at the outset, inquire as to the circumstances under which an officer of the United States, whether the

Head of a Department or a subordinate, may or may not, by his acts, impose liability upon the Government, in the absence of authority from Congress.   The conclusion we have reached upon that inquiry is controlling.

Looking at the statutes in force at the time the transactions here in question occurred, we find that by § 3679 of the Revised Statutes, it was provided that "no department of the Government shall expend, in any one fiscal year, any sum in excess of appropriations made by Congress for that fiscal year, or involve the Government in any contract for the future payment of money in excess of such appropriations;" and by § 3732, that "no contract or purchase on behalf of the United States shall be made, unless the same is authorized by law or is under an appropriation adequate to its fulfillment, except in the War and Navy Departments, for clothing, subsistence, forage, fuel, quarters, or transportation, which, however, shall not exceed the necessities of the current year."

An act of Congress of June 22d, 1874, provided that "hereafter no contract shall be made for the rent of any building or part of any building in Washington, not now in use by the Government, to be used for the purposes of the Government until an appropriation therefor shall have been made in terms by Congress."   18 Stat. 133, 144, c. 388.   Again, by the deficiency appropriation act of March 3d, 1877, it was provided that "hereafter no contract shall be made for the rent of any building, or part of any building, to be used for the purposes of the Government in the District of Columbia, until an appropriation therefor shall have been made in terms by Congress, and that this clause be regarded as notice to all contractors or lessors of any such building or any part of building."   19 Stat. 363, 370, c. 106.

The above provisions were all in force when the Civil Service Commission was created.   By the act creating that tribunal it was provided that "it shall be the duty

of the Secretary of the Interior to cause suitable and
convenient rooms and accommodations to be assigned or
provided, and to be furnished, heated, and lighted, at
the city of Washington, for carrying on the work of said
commission and said examinations, and to cause the
necessary stationery and other articles to be supplied,
and the necessary printing to be done for said commis-
sion." 22 Stat. 403, 405, c. 27, January 16, 1883.

We have seen that the occupancy by the Civil Service
Commission of the plaintiffs' building commenced Au-
gust 1st, 1900. Now, the general appropriation act for
the legislative, executive and judicial expenses of the
Government, covering the fiscal year ending June 30th,
1901, opened with the clause providing that "the fol-
lowing sums be and the same are hereby, appropriated
out of any money in the Treasury not otherwise appro-
priated, in *full* compensation for the service of the fiscal
year ending June 30th, 1901, *for the objects hereinafter
expressed*, namely. . . . For rent of buildings for the
Department of the Interior, namely, . . . Civil Serv-
ice Commission, $4,000." 31 Stat. 86, 125, c. 192. Each
appropriation act for subsequent fiscal years, covering
the whole period of the occupancy by the Commission
of the plaintiffs' building, opened with a similar provi-
sion. So that the plaintiffs and all others dealing with
officers of the Government were distinctly advised as
to the amount appropriated by Congress for any speci-
fied purpose, and knew, or are to be deemed to have
known, that when they received such specified amount
for the purpose named, it was intended by Congress to
be in full compensation for the service rendered for the
Government in that fiscal year. The plaintiffs received
before the bringing of this suit the appropriation made
by Congress specifically for rent of the building for the
Civil Service Commission, during the entire period of
the Commission's occupancy and use of it. We recall,

in this connection, the. fact found by the court below, that the claimants' receipted bills recited that the amount paid to them was *in full* for the rent, *as fixed by the appropriation acts of Congress*—excepting always, it is true, the rent for the basement of their building. It is also true that the plaintiffs complained that the amount appropriated was inadequate, but they accepted and receipted for it *as the sum appropriated by Congress for purposes of rent for the Commission*, expecting or hoping, no doubt, that Congress would, in due time, remedy the wrong which, as they insisted, had been and was being done to them in respect both of the building and its basement.

But it is said in this connection that the act of 1883 made it the duty of the Secretary of the Interior to cause suitable rooms to be provided for the Commission, and as the plaintiffs' building was occupied and used by the Commission, for public purposes, with his knowledge and consent, the Government is under a liability to pay the claimants the reasonable value of such occupancy and use. This view cannot be accepted, except upon the theory that during the period in question it was within the power of the Secretary, by contract, in the matter of rent for a building for the Commission, to exceed the sum appropriated by Congress for that purpose. We reject that theory as inconsistent with the acts of Congress and therefore inadmissible. It is for Congress, proceeding under the Constitution, to say what amount may be drawn from the Treasury in pursuance of an appropriation. The statutes above referred to make it plain that the Secretary was without power to make any express contract for rent in excess of the appropriation made by Congress, particularly where, as here, Congress had taken care to say, in respect of each year's rent, that the appropriation shall be in *full* compensation for the specific purpose named in the appropriation act. It is equally

clear that the Secretary could not, by his acts, create a state of things from which, in the absence of legislation on the subject, an implied contract could arise under which the Government would be liable, by reason of its *constitutional* duty, to make just compensation for the use of private property taken for public purposes. In such a case the remedy is with Congress, and not with the courts. If an officer, upon his own responsibility and without the authority of Congress, assumes to bind the Government, by express or implied contract, to pay a sum in excess of that limited by Congress for the purposes of such a contract, the contract is a nullity, so far as the Government is concerned, and no legal obligation arises upon its part to meet its provisions. If the circumstances justify such a course, Congress in its discretion can intervene and do justice to the owner of private property used by officers of the Government in good faith for public purposes, although without direct legislative authority. The plaintiffs' remedy is in that direction.

What we have said is equally applicable to the claim of the plaintiffs for the reasonable value of the use of the basement of the building in question. Granting that the plaintiffs have not been paid for its use such sum as they are justly entitled to have received, we are still confronted with the facts heretofore referred to, that Congress has appropriated, each year of the Commission's occupancy, a specific sum in full for rent of buildings for the use of that body; that it has in effect prohibited the use of the public money, in excess of that sum for rent of buildings for that purpose; and that plaintiffs have already received the entire sums appropriated by Congress for rent. The conclusion necessarily follows that the Government cannot, in this case, be made liable to *suit*, either under an express or implied contract, to pay for the use of plaintiffs' property any amount in excess of the sums appropriated by Congress for that purpose.

But it is contended by the plaintiffs that their right to recover does not depend upon contract, expressed or implied, but upon the duty, expressly imposed by the Constitution, to make just compensation for private property taken for public use. In support of this view we are reminded that the Tucker act of March 3d, 1887, 24 Stat. 505, c. 359, for the first time, in express words, conferred on the Court of Claims jurisdiction to hear and determine claims against the Government "founded upon the Constitution of the United States." The claims here in question, it is argued, can be rested exclusively on the Constitution, without reference to any statute of the United States, or to any contract arising under an act of Congress. The argument is ingenious but it is unsound. It cannot be said that any claim for a specific amount of money against the United States is founded on the Constitution, unless such claim be either, expressly or by necessary implication, authorized by some valid enactment of Congress. The creation of a Civil Service Commission, providing a building or rooms for its use, and the amount to be paid from time to time by the Government as rent for such building and rooms, are all matters within the complete control of Congress. It is the Constitution which places these matters under the control of Congress. If an officer of the United States assumes, by virtue alone of his office, and *without the authority of Congress*, to take such matters under his control, he will not, in any legal or constitutional sense, represent the United States, and what he does or omits to do, without the authority of the Congress, cannot create a claim against the Government "founded upon the Constitution." It would be a claim having its origin in a violation of the Constitution. The constitutional prohibition against taking private property for public use without just compensation is directed against the Government, and not against individual or public officers

proceeding without the authority of legislative enactment. The taking of private property by an officer of the United States for public use, without being authorized, expressly or by necessary implication, to do so by some act of Congress, is not the act of the Government. So that whether we look at the jurisdiction of the court below, in respect either of claims *alleged to be* founded upon the Constitution or to arise from contract, the plaintiffs cannot maintain this *suit* against the Government; for, they have received the entire sums which Congress appropriated to be paid out of the Treasury on account of rent of buildings or quarters for the Civil Service Commission.

There are other aspects of the case to which the elaborate arguments of counsel have been directed. We deem it unnecessary to notice them in this opinion. Nor do we deem it necessary to follow them in their extended and able discussion of the authorities.

The judgment must be affirmed.

*It is so ordered.*