Hans **VORHAUER** et ux.

v.

**UNITED STATES of America et al.**

**Civ. A. No. 74–1311.**

United States District Court,
E. D. Pennsylvania.

Dec. 30, 1976.

Michael Garner, Student Atty., Jack J. Levine, Supervising Atty., Philadelphia, Pa., for plaintiffs.

Jeffrey Simcox, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

In this case, plaintiffs seek damages for the seizure and subsequent destruction of their property. The matter comes before me upon the motion of the defendants to dismiss the complaint or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The complaint contains two distinct claims. First, Hans Vorhauer and Phyllis Vorhauer, his wife, seek damages against various named and unnamed special agents of the FBI for the allegedly illegal seizure of certain property from the Vorhauers' home. Secondly, they ask for damages from the United States for the allegedly wrongful destruction of this same property.[1] Jurisdiction is asserted under 28

---

1. Plaintiffs also seek a declaratory judgment that the seizure and destruction of the property was wrongful and in violation of their constitutional rights. My dismissal for lack of jurisdiction of the damage claim against the agents also disposes of the request for a declaratory judgment against them since the Declaratory Judgment Act is not an independent basis of federal jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). As to the claim against the United States, the Tucker Act does not authorize the awarding of declaratory relief. *Lee v.*

U.S.C. § 1331 as to the individual agents and under the Tucker Act, 28 U.S.C. § 1346(a)(2), as to the United States. For the reasons stated below I conclude that summary judgment for the defendants must be granted on both of plaintiffs' claims.

## I. *Factual Background*

The material facts as alleged in plaintiffs' amended complaint[2] are not in dispute. On February 25, 1970, plaintiff, Hans Vorhauer, was arrested by FBI agents at his home for theft of an interstate shipment of goods. At the same time and pursuant to a search warrant issued by a United States Magistrate, the plaintiffs' home was searched in an effort to locate a pair of handcuffs and documents relating to the stolen shipment. These things were never found, but the agents did seize numerous other items including a firearm, BB guns, tools, make-up, an address book, and various papers and documents.[3]

On July 25, 1972, Hans Vorhauer pled guilty and was sentenced to a period of one year's imprisonment for possession of goods stolen from an interstate shipment, specifically three pairs of handcuffs which had been seized elsewhere. The next day, July 26, 1972, Mr. Vorhauer, through his attorney, Robert Scandone, Esquire, filed a petition in the criminal action for the return of the property seized at his home. The petition asserted that none of this property was contraband nor evidence in any pending or contemplated criminal prosecution. The government did not answer this petition until over a month later, September 5, 1972, at which time it stated:

> Defense counsel and counsel for the government have conferred regarding the disposition of the above items both prior to and subsequent to the institution of the present Petition. It is the understanding of the government as a result of these discussions that in lieu of the return of these items to the defendant these items may be destroyed. (Government Response to Petition for Return of Seized Property, paragraph 3.)

Although a copy of the government's response to the petition was mailed to Mr. Scandone four days earlier on September 1, 1972, he made no objection to it. An order for destruction was signed by Chief Judge Joseph S. Lord, III, of this court on September 7, 1972. Notice of the destruction order was received by Mr. Scandone, who in turn notified Vorhauer by mail addressed to the Federal Correctional Institute at Danbury, Connecticut, where Vorhauer was serving his sentence. However, prior to receipt of the notice Vorhauer was removed to the District of Columbia jail by U.S. Marshals. The authorities at Danbury returned the notification to Mr. Scandone, advising him that Mr. Vorhauer was no longer at that facility. On November 18, 1972, Mr. Vorhauer was released from federal custody and turned over to Pennsylvania authorities who lodged him at the State Correctional Institute at Dallas, Pennsylvania. Mr. Scandone finally learned of his client's whereabouts, sent the destruction notice to him, and Mr. Vorhauer received it on No-

*Thornton*, 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975).

**2.** Plaintiffs' initial complaint was filed pro se. Later they obtained representation by student counsel from the Civil Rights for Inmates Program at Temple Law School and an amended complaint was filed.

**3.** Among the items seized were numerous manila folders with labels such as "Burglar Alarms," "Lock Picking Tools," "Safe and Chest Identification," and "Vaults and Bank Equipment" and containing various pamphlets on the respective subjects; three diagrams of silencers; a manila folder containing the lay-out of a store and marked "no color—carry a gun, vending machine keys, ADT device;" a box containing a stethoscope, tape and listening devices; a tear gas gun; some melted down articles of silver; and various social security cards and drivers licenses both in blank and in the names of third parties. Although alone none of the items seized are contraband, taken together they clearly seem reasonably related to the execution of bank robberies, burglaries, etc. Yet for some strange reason the government has not attempted to defend the case sub judice by arguing that the seizure of these items was justified on this basis.

vember 18, 1972. Mr. Vorhauer filed a notice of appeal of Chief Judge Lord's order two days later on November 20, 1972, but this was dismissed by the Court of Appeals as untimely. Plaintiff filed a motion in that court for reconsideration of the dismissal of his appeal and for a stay of Chief Judge Lord's order, but those were also denied, the Court of Appeals noting that the property had already been destroyed and that Mr. Vorhauer might have a remedy in the district court. Thereafter, plaintiffs instituted the instant suit.

## II. The Claim Against the Individual Agents

The substantive basis for recovery against the FBI agents is *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which allows damage actions to be brought against federal officers for violations of fourth amendment rights. As noted earlier, jurisdiction for this claim is founded upon 28. U.S.C. § 1331, which requires the amount in controversy to be over $10,000. After careful consideration of the entire record in this case, I conclude that plaintiffs' claim against the FBI agents must be dismissed for failure to satisfy this jurisdictional amount. In reaching this result, I am not unmindful of the solicitous attitude which courts have taken in placing a "value" on the deprivation of constitutional rights. See generally 14 *C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure* § 3709 (1976). Nonetheless, in the unique circumstances of this case I am convinced to a legal certainty that plaintiffs have not sustained injury equal to or greater than $10,000. See *St. Paul Mercury Indemnity Company v. Red Cab Company*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

■ Even accepting all the allegations of the complaint as true, the invasion of fourth amendment rights for which the plaintiffs may recover against the FBI agents is exceedingly minor. The reason is that the invasion of privacy entailed in the entry and search of plaintiffs' home were carried out pursuant to a duly authorized search warrant. There are no allegations that the warrant was issued on the basis of false statements, deliberate or otherwise, made by the agents to the magistrate. Rather, the only claim of illegality is that the information which was presented to the magistrate did not amount to probable cause for the search. In effect, the plaintiffs contend that the magistrate committed an error of legal judgment in issuing the warrant. But even if the magistrate should not have issued it, the agents were entitled to rely on the authority to search which the warrant conferred, at least in the absence of allegations, not present here, that it was facially defective. It is thus clear that the plaintiffs may not recover against the agents for the invasion of constitutionally protected privacy entailed in their entering the Vorhauers' residence to execute the search warrant. See, e. g., *Commonwealth ex rel. Feiling v. Sincavage*, 439 F.2d 1133 (3d Cir. 1971).

■ Moreover, the Vorhauers may not recover against the agents on the theory that the search they conducted was more intrusive than necessary. This is not a case in which the officers continued the search after finding the items named in the warrant. Compare *United States v. Highfill*, 334 F.Supp. 700 (E.D.Ark.1971). Here the agents never did find the item named in the warrant and so were entitled to continue searching until they had exhausted all possible areas of the residence where it might have been concealed. See *Y. Kamisar, W. LaFave & J. Israel, Modern Criminal Procedure* p. 264 (4th ed. 1974); *Comment*, 7 *Conn.L.Rev.* 346, 356 (1975). Since the handcuffs were small they might have been hidden in any area of the residence where the items that were in fact seized were found. Thus the plaintiffs have no claim against the agents for the *search* of these areas.

■ It appears, then, that the only injury suffered by the plaintiffs which could possibly be charged to the officers is the deprivation of property which resulted from their *seizure* of the items not named in the

warrant.[4] The combined value of the seized items hardly approaches $10,000. as plaintiffs implicitly admit by claiming only $2000. from the United States as compensation for their *outright* destruction. See part III of this opinion infra. Furthermore, the agents may not be held liable for the total value of the seized goods since their destruction was not brought about by those officers. At most, the officers can only be held responsible for the plaintiffs' being deprived of their property from the date of the seizure, February 25, 1970, until Chief Judge Lord signed the order of destruction on September 7, 1972, a period of approximately 30 months. It is inconceivable that the Vorhauers' loss of use of the seized items for this period of time would entitle them to a recovery equal to or exceeding $10,000. I therefore will dismiss the complaint against the agents because the plaintiffs have failed to satisfy the jurisdictional amount requirement of Section 1331.

### III. *The Claim Against the United States*

█ Plaintiffs seek compensatory damages of $2000. from the United States based on the claim that the destruction of the seized items pursuant to Chief Judge Lord's order of September 7, 1972, amounted to a deprivation of their property without due process of law and a "taking" without just compensation in violation of the fifth amendment. Since this is a claim for less than $10,000. "founded upon the Constitution," the Tucker Act, 28 U.S.C. § 1346(a)(2), clearly gives this court subject matter jurisdiction. *Neely v. United States*, 546 F.2d 1059, 1063 (3d Cir. 1976). But as the Supreme Court noted in *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), "the Tucker Act . . . is itself only a jurisdictional statute; it does not create any substantive right enforcible against the United States for money damages." In order to recover

damages against the United States, plaintiffs must overcome the obstacle of sovereign immunity by showing that the United States has agreed specifically to be sued for money damages in a situation like this. *Duarte v. United States*, 532 F.2d 850, 852 (2d Cir. 1976). The mere assertion that substantive constitutional rights have been violated is insufficient to meet this burden:

> In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity, and we regard as unsound the amici's argument that all substantive rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation.

*Testan*, supra, 424 U.S. at 400–401, 96 S.Ct. at 954.

█ Although the plaintiffs attempt to characterize their claim as one for compensation in respect of the government's taking of their property, it is apparent that their theory of recovery against the United States is not "tied to the language, purpose and self-executing aspects of [the Just Compensation Clause of the Fifth Amendment]." *Id.* Therefore they are not aided by the *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). The present matter is not a case where the Congress by statute has affirmatively authorized the destruction ("taking") of plaintiffs' property against their wishes. Rather the destruction was carried out pursuant to a court order which in turn was issued on the basis of a representation to the court by an assistant United States Attorney that Hans Vorhauer through counsel had agreed to this disposition of the property. At the heart of the plaintiffs' claim against the United States are the alternative allegations that Vorhauer's attorney, Mr. Scandone, either did not consent to the destruction of the seized property as the assistant United States At-

---

**4.** For purposes of this motion for summary judgment I assume that this seizure was unjustified. But see note 3 supra.

It should be noted that there are no allegations that in executing the warrant the officers used excessive force, or indeed any force at all, or resorted to threats, abusive language, etc. Moreover, neither plaintiff claims to have sustained any emotional shock or injury as a result of the search and seizure.

torney had represented to the court, or, if he did consent, lacked authority to do so. In effect, the Vorhauers seek to recover *against the United States* either for (1) the misrepresentations of an assistant United States Attorney, (2) the presumably unjustified reliance by an assistant United States Attorney on the authority of Mr. Scandone to consent to the destruction of plaintiffs' property, or (3) the presumably unjustified reliance by a District Judge on the representations of an assistant United States Attorney. Even if the plaintiffs were able to prove that the actions of the Assistant United States Attorney or Chief Judge Lord were in some way culpable[5] they would not be able to recover against the United States because these actions were certainly not authorized by it. See *Regional Rail Reorganization Act Cases*, supra, 419 U.S. at 127, 95 S.Ct. at 350 n. 16; *Yearsley v. Ross Construction Co.*, 309 U.S. 18, 21–22, 60 S.Ct. 413, 414–415, 84 L.Ed. 554 (1940); *Hooe v. United States*, 218 U.S. 322, 336, 31 S.Ct. 85, 89, 54 L.Ed. 1055 (1910).

Since this case does not fall within the rubric of the *Rail Cases*, "it follows that the asserted entitlement to money damages depends upon whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Testan*, supra, 424 U.S. at 400, 96 S.Ct. at 954, quoting *Eastport-Steamship Corp. v. United States*, 372 F.2d 1002, 1009, 178 Ct.Cl. 599, 607 (1967). Plaintiffs have pointed to no such statute. Indeed the only arguably[6] applicable statute is the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., but it provides plaintiffs no foundation for recovery since they have failed to exhaust their administrative remedies. See 28 U.S.C. § 2675; *Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971).

Accordingly, the complaint against the United States must also be dismissed.

---

**5.** It will be noted that a suit against Judge Lord individually would be barred by the doctrine of judicial immunity, see *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and a suit against the assistant United States Attorney would present difficult issues of prosecutorial immunity under *Imbler v. Patchman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

**6.** The Tort Claims Act would not afford a basis for relief against the United States on account of the actions taken by Judge Lord since the Act does not cover members of the judicial branch of government. See *Cromelin v. United States*, 177 F.2d 275 (5th Cir. 1949), cert. denied, 339 U.S. 944, 70 S.Ct. 790, 94 L.Ed. 1359 (1950).