Justice ALITO, dissenting.
Twice this Term, we have made the point that we have basically gotten out of the business of recognizing private rights of action not expressly created by Congress. Just a month ago in Comcast Corp. v. National Assn. of African American-Owned Media , 589 U.S. ----, ---- - ----, 140 S.Ct. 1009, 1015-1016, --- L.Ed.2d ---- (2020), after noting a 1975 decision[1] inferring a private right of action under 42 U.S.C. § 1981, we wrote the following about that decision:
"That was during a period when the Court often 'assumed it to be a proper *1332 judicial function to provide such remedies as are necessary to make effective a statute's purpose.' Ziglar v. Abbasi , 582 U.S. ----, ---- [137 S.Ct. 1843, 1855, 198 L.Ed.2d 290] (2017) (internal quotation marks omitted). With the passage of time, of course, we have come to appreciate that, '[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress' and '[r]aising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.' Alexander v. Sandoval , 532 U.S. 275, 286-287, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (internal quotation marks omitted)."
A month before that, in Hernández v. Mesa , 589 U.S. ----, 140 S.Ct. 735, --- L.Ed.2d ---- (2020), we made the same point and accordingly refused to infer a cause of action under the Fourth Amendment for an allegedly unjustified cross-border shooting. We reasoned that "a lawmaking body that enacts a provision that creates a right ... may not wish to pursue the provision's purpose to the extent of authorizing private suits for damages." Id. , at ----, 140 S.Ct., at 742. Other recent opinions are similar. See, e.g. , Ziglar v. Abbasi , 582 U.S. ----, ---- - ----, ----, 137 S.Ct. 1843, 1855-1858, 1864, 198 L.Ed.2d 290 (2017) ; Jesner v. Arab Bank, PLC , 584 U.S. ----, ---- - ----, 138 S.Ct. 1386, 1402-1403, 200 L.Ed.2d 612 (2018) ; id ., at ----, 138 S.Ct., at 1408 (THOMAS, J., concurring); id ., at 1408, 1409-1410 (ALITO, J., concurring in part and concurring in judgment); id ., at 1412 (GORSUCH, J., concurring in part and concurring in judgment).
Today, however, the Court infers a private right of action that has the effect of providing a massive bailout for insurance companies that took a calculated risk and lost. These companies chose to participate in an Affordable Care Act program that they thought would be profitable. I assume for the sake of argument that the Court is correct in holding that § 1342 of the Affordable Care Act created an obligation that was not rescinded by subsequent appropriations riders. Thus, for present purposes, I do not dispute the thrust of the analysis in Parts I-III of the opinion of the Court.
I
My disagreement concerns the critical question that the Court decides in the remainder of its opinion. In order for petitioners to recover, federal law must provide a right of action for damages. The Tucker Act, 28 U.S.C. § 1491, under which petitioners brought suit, provides a waiver of sovereign immunity and a grant of federal-court jurisdiction, but it does not create any right of action. See, e.g. , United States v. Navajo Nation , 556 U.S. 287, 290, 129 S.Ct. 1547, 173 L.Ed.2d 429 (2009). Nor does any other federal statute expressly create such a right of action. The Court, however, holds that § 1342 of the Affordable Care Act does so by implication. Because § 1342 says that the United States "shall pay" for the companies' losses, 42 U.S.C. § 18062(b)(1), the Court finds it is proper to infer a private right of action to recover for these losses.
This is an important step. Under the Court's decision, billions of taxpayer dollars will be turned over to insurance companies that bet unsuccessfully on the success of the program in question. This money will have to be paid even though Congress has pointedly declined to appropriate money for that purpose.
Not only will today's decision have a massive immediate impact, its potential consequences go much further. The Court characterizes provisions like § 1342 as *1333 "rare," ante , at 1328 - 1329, but the phrase the "Secretary shall pay"--the language that the Court construes as creating a cause of action--appears in many other federal statutes.
II
The Court concludes that it is proper for us to recognize a right of action to collect damages from the United States under any statute that " 'can fairly be interpreted as mandating compensation.' " Ante , at 1328. The Court is correct that prior cases have set out this test, but as the Court acknowledges, we have "[r]arely" had to determine whether it was met. See ante , at 1328 - 1329. And we have certainly never inferred such a right in a case even remotely like these.
Nor has any prior case provided a reasoned explanation of the basis for the test. In United States v. Testan , 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), the Court simply lifted the language in question from an opinion of the old United States Court of Claims before holding that the test was not met in the case at hand. Id ., at 400-402, 96 S.Ct. 948 (citing Eastport S. S. Corp. v. United States , 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967) ). The Court of Claims opinion, in turn, did not explain the origin or basis for this test. See id. , at 607, 372 F.2d at 1009. And not only have later cases parroted this language, they have expanded it. In United States v. White Mountain Apache Tribe , 537 U.S. 465, 473, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) (emphasis added), the Court wrote that "[i]t is enough ... that a statute ... be reasonably amenable to the reading that it mandates a right of recovery in damages."
Despite the uncertain foundation of this test, our post- Testan decisions have simply taken it as a given. I would not continue that practice. Before holding that this test requires the payment of billions of dollars that Congress has pointedly refused to appropriate, we ought to be sure that there is a reasonable basis for this test. And that is questionable.[2]
III
There is obvious tension between what the Court now calls the "money-mandating" test, ante , at 1328 - 1329, and our recent decisions regarding the recognition of private rights of action. Take the statute at issue in our Comcast decision. That provision, 42 U.S.C. § 1981(a), states:
"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." (Emphasis added.)
Our opinion in Comcast suggested that we might not find this "shall have" language sufficient to justify the recognition of a damages claim if the question came before us today as a matter of first impression. See 589 U.S., at ---- - ----, 140 S.Ct., at 1015-1016. But if that is so, how can we reach a different conclusion with respect to the "shall pay" language in § 1342 of the Affordable Care Act? Similarly, the Fourth Amendment provides that "[t]he right of the people to be secure ... against unreasonable ... seizures ... shall not be violated ." (Emphasis added.)
*1334 Can this rights-mandating language be distinguished from what the Court describes as the "money-mandating" language found in § 1342? See Hernández , 589 U.S., at ----, ---- - ----, 140 S.Ct., at 743, 749-750 (rejecting extension of Bivens v. Six Unknown Fed. Narcotics Agents , 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), to Fourth Amendment claim arising in a "new context").
One might argue that the assumptions underlying the enactment of the Tucker Act justify our exercising more leeway in inferring rights of action that may be asserted under that Act. When the Tucker Act was enacted in 1887, Congress undoubtedly assumed that the federal courts would " '[r]ais[e] up causes of action,' " Alexander v. Sandoval , 532 U.S. 275, 287, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), in the manner of a common-law court. At that time, federal courts often applied general common law. But since Erie R. Co. v. Tompkins , 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the federal courts have lacked this power. Yet the "money-mandating" test that the Court applies today, ante , at 1328 - 1329, and n. 13, bears a disquieting resemblance to the sort of test that a common-law court might use in deciding whether to create a new cause of action. To be sure, some of the claims asserted under the Tucker Act, most notably contract claims, are governed by the new federal common law that applies in limited areas involving " 'uniquely federal interests.' " Boyle v. United Technologies Corp. , 487 U.S. 500, 504, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) ; see also Testan , 424 U.S. at 400, 96 S.Ct. 948. And the recognition of an implied right to recover on such claims is thus easy to reconcile with the post- Erie regime. There may also be some sharply defined categories of claims[3] that may be properly asserted simply as a matter of precedent.[4] But the exercise of common-law power in cases like the ones now before us is a different matter.
An argument based on Congress's assumptions in enacting the Tucker Act would present a question that is similar to one we have confronted under the Alien Tort Statute (ATS), a provision like the Tucker Act that grants federal jurisdiction but does not itself create any right of action. Sosa v. Alvarez-Machain , 542 U.S. 692, 713, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004). Our cases have assumed that the ATS was enacted on the assumption that it would provide a jurisdictional basis for plaintiffs to assert common-law claims, see *1335 id ., at 724, 124 S.Ct. 2739, but our recent cases have held that even there, we should exercise "great caution" before recognizing any new claims not created by statute, id. , at 728, 124 S.Ct. 2739. See also Jesner , 584 U.S., at ---- - ----, 138 S.Ct., at 1402-1403 ; Kiobel v. Royal Dutch Petroleum Co. , 569 U.S. 108, 116-117, 133 S.Ct. 1659, 185 L.Ed.2d 671 (2013). There is every reason to believe that a similar caution should guide cases under the Tucker Act-especially when billions of dollars of federal funds are at stake. The money-mandating test that the Court applies here is in stark tension with this precedent.
Despite its importance, the legitimacy of inferring a right of action under § 1342 has not received much attention in these cases. The Federal Circuit addressed the question in passing in a footnote, 892 F.3d 1311, 1320, n. 2 (2018), and in this Court, the briefing and argument focused primarily on other issues. No attempt was made to reconcile our approach to inferring rights of action in Tucker Act cases with our broader jurisprudence.
I am unwilling to endorse the Court's holding in these cases without understanding how the "money-mandating" test on which the Court relies fits into our general approach to the recognition of implied rights of action.[5] Because the briefing and argument that we have received have not fully addressed this important question, I would request supplemental briefing and set the cases for re-argument next Term.
For these reasons, I respectfully dissent.

The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co. , 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Justice THOMAS and Justice GORSUCH join all but Part III-C of this opinion.

Relying on Alexander v. Sandoval , 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), the dissent's logic suggests that a federal statute could never provide a cause of action for damages absent magic words explicitly inviting suit. See post, at 1331 - 1332, 1333 - 1335. We have repeatedly rejected that notion-including in opinions written by Sandoval 's author. See, e.g. , United States v. Bormes , 568 U.S. 6, 15-16, 133 S.Ct. 12, 184 L.Ed.2d 317 (2012) ; United States v. Navajo Nation , 556 U.S. 287, 290, 129 S.Ct. 1547, 173 L.Ed.2d 429 (2009). Not even Sandoval went as far as the dissent; that decision instead explained that "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." 532 U.S. at 286, 121 S.Ct. 1511. That is precisely what the money-mandating inquiry does: It provides a framework for determining when Congress has authorized a claim against the Government.
This framework also makes good sense. Cf. post , at 1333. As the author of Sandoval explained, if a statutory obligation to pay money is mandatory, then the congressionally conferred "right to receive money," post, at 1335, n. 5, will typically display an intent to provide a damages remedy for the defaulted amount, Bowen v. Massachusetts , 487 U.S. 879, 923, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting) (a "statute commanding the payment of a specified amount of money by the United States impliedly authorizes (absent other indication) a claim for damages in the defaulted amount"). As this Court recently observed, Congress enacted the Tucker Act to "suppl[y] the missing ingredient for an action against the United States for the breach of monetary obligations not otherwise judicially enforceable." Bormes , 568 U.S. at 12, 133 S.Ct. 12.
By the dissent's contrary suggestion, not only is a mandatory statutory obligation to pay meaningless, so too is a constitutional one. After all, the Constitution did not "expressly create ... a right of action," post, at 1332, when it mandated "just compensation" for Government takings of private property for public use, Amdt. 5; see also First English Evangelical Lutheran Church of Glendale v. County of Los Angeles , 482 U.S. 304, 315-316, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). Although there is no express cause of action under the Takings Clause, aggrieved owners can sue through the Tucker Act under our case law. E.g., Ruckelshaus v. Monsanto Co. , 467 U.S. 986, 1016-1017, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) (citing United States v. Causby , 328 U.S. 256, 267, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) ).

Johnson v. Railway Express Agency, Inc. , 421 U.S. 454, 459, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

Moreover, there is at least an argument that the Court's application of the test here is itself in conflict with United States v. Testan , 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), which also directed that the "grant of a right of action must be made with specificity."

Takings claims are an example. During the period when federal courts applied general common law, such claims were brought under the Tucker Act, apparently on the theory of implied contract. See, e.g. , Hurley v. Kincaid , 285 U.S. 95, 104, 52 S.Ct. 267, 76 L.Ed. 637 (1932) ; United States v. Lynah , 188 U.S. 445, 458-459, 23 S.Ct. 349, 47 L.Ed. 539 (1903). But the Court rejected the argument that a takings claim could be based "exclusively on the Constitution, without reference to any statute of the United States, or to any contract arising under an act of Congress." Hooe v. United States , 218 U.S. 322, 335, 31 S.Ct. 85, 54 L.Ed. 1055 (1910).

Compare Testan , 424 U.S. at 400, 96 S.Ct. 948 (suggesting that private remedies might be available for contract claims); United States v. Mitchell , 463 U.S. 206, 224-228, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (relying on "fiduciary relationship ... [that] arises when the Government assumes ... control over forests and property belonging to Indians" to create cause of action); Bell v. United States , 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961) (adjudicating suit brought by former service members for compensation while they were prisoners of war), with Bowen v. Massachusetts , 487 U.S. 879, 905, n. 42, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (rejecting cause of action cognizable under the Tucker Act based on "shall pay" requirement under the Medicaid Act, 42 U.S.C. § 1396b(a) ).

The Court claims that the logic of this opinion "suggests that a federal statute could never provide a cause of action for damages absent magic words explicitly inviting suit." Ante , at 1328, n. 12. But all I suggest is that the Court request briefing on the question of inferring causes of action to recover damages under the Tucker Act. The Court makes no effort to explain how the test it applies here can be reconciled with our general approach to inferring private rights of action but is apparently content to allow that inconsistency to remain.
The Court is flatly wrong in saying that the test in Alexander v. Sandoval , 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) -whether a statute "displays an intent to create not just a private right but also a private remedy"-is "precisely" the same as its "money-mandating inquiry." Ante , at 1328, n. 12. In fact, the "money-mandating inquiry" is precisely contrary to the statement in Sandoval. Sandoval said unequivocally that it is not enough if a statute merely "displays an intent to create ... a private right," 532 U.S. at 286, 121 S.Ct. 1511, but according to the Court, it is sufficient for a statute to manifest only an intent to create a right to receive money.
The Court asserts that there is no real difference between the billion-dollar private right of action that the Court now creates on behalf of sophisticated economic actors and our prior precedents, ante , at 1331, n. 14, but the Court does not identify analogous precedents-perhaps because there are none to cite.