Marvin L. SZYMKOWICZ, et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA, Defendant.**

Civ. A. No. 90–1964 SSH.

United States District Court, District of Columbia.

Feb. 5, 1993.

June 23, 1986.

Arabella W. Teal, Sheila Footer, Silver, Freedman & Taff, Washington, DC, for plaintiffs.

Diana M. Savit, Office of Corp. Counsel, Washington, DC, for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendant's motion to dismiss, or in the alternative, for summary judgment, and plaintiffs' motion for partial summary judgment.[1] For the reasons stated, the Court denies plaintiffs' motion for partial summary judgment and grants defendant's motion for summary judgment.[2]

### Facts

The Court takes the following facts from plaintiffs' second amended complaint.[3] Plaintiffs Marvin L. Szymkowicz and Diana M. Savit, and Evan M. Koster and Bonnie Y. Hochman, are the former and current owners, respectively, of 4103 Military Road, N.W., Washington, D.C. ("the property"). At the time the actions which gave rise to this suit occurred, plaintiffs Szymkowicz and Savit, husband and wife, owned and resided on the property. They purchased the property in 1977. In 1983, the District of Columbia Council passed legislation which closed a portion of a public alley adjacent to the property. The legislation, D.C.Law 4–169, reverted title to the land to the owners of the abutting property. Under this law, Szymkowicz and Savit shared title to the closed portion of the alley with the Francises, the

owners of 4115 Military Road, and two other owners of adjacent property.

Szymkowicz and Savit entered an agreement with the Francises, in which both parties consented to the other using the closed portion of the alley for parking. Beginning in early 1985, plaintiffs and the Francises placed physical barriers in the closed portion of the alley in an attempt to block public access thereto. They also began parking their automobiles in the closed portion of the alley.

Plaintiffs Szymkowicz and Savit claim to have received approximately 20 to 30 parking citations issued by officers of the Metropolitan Police Department and agents of the District of Columbia Department of Public Works.[4] Upon receiving a parking ticket, Szymkowicz or Savit usually would take the ticket and a copy of D.C.Law 4–169 to the Metropolitan Police Department Second District Headquarters, where an officer would void the ticket. Occasionally, it was too late for the Second District to void the ticket, and plaintiffs would have to appear before the Bureau of Traffic Adjudication or write letters to the Bureau to avoid paying the tickets. Plaintiffs state that because "it was too much trouble to attend hearings to challenge the erroneous tickets," they sometimes paid them under protest.

1. Defendant initially filed a motion to dismiss, or for summary judgment, on or about August 30, 1991, when this case was before Judge Boudin. After this motion was fully briefed, plaintiffs amended their complaint for a second time. Before the Court is defendant's renewed motion of October 2, 1992, and the opposition thereto.

2. Because the Court refers to evidence outside the pleadings, the Court considers defendant's motion for summary judgment rather than the motion to dismiss for failure to state a claim. See Fed.R.Civ.P. 12(b). The Court also notes that findings and conclusions are unnecessary under Fed.R.Civ.P. 52(a), but, given the state of the Court's work product in this case, an Opinion is issued.

3. Plaintiffs' original complaint contained a claim for slander against one or more unknown individuals who plaintiffs believed had falsely informed District of Columbia authorities that plaintiffs were illegally parking in the portion of the alley in question. Plaintiffs dropped this allegation and the unknown parties as defendants in their first amended complaint when they

were unable to ascertain the identities of those individuals. Plaintiffs Szymkowicz and Savit sold the property in question on March 20, 1992. The second amended complaint added Evan M. Koster and Bonnie Y. Hochman, the purchasers of the property, as plaintiffs.

4. The District claims to have a record of only ten tickets, three of which were issued to the plaintiffs, five to Mr. Francis, and two to the employee of a neighbor, who had plaintiffs' permission to park her car in the alley. The Court does not find the discrepancy in the number of tickets issued to be a genuine issue of material fact in dispute preventing entry of summary judgment. Nevertheless, for the purposes of these motions, the Court assumes plaintiffs received approximately 20 to 30 parking tickets. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) (requiring that courts, in considering a motion for summary judgment, view the facts in a light most favorable to the non-moving party).

Plaintiffs Koster and Hochman received four or five tickets during the summer of 1992. They succeeded in having the tickets rescinded over the telephone. In addition, they have been disturbed at least four times in the early morning by District employees challenging their right to park in the alley. In one such incident, Hochman allegedly was verbally abused by a woman who threatened to have her car towed.

Plaintiffs allege two main effects of the District's repeated ticketing. First, they contend that the effort expended to rescind the tickets causes them substantial inconvenience. Specifically, it is disruptive to their family lives and it interferes with their ability to accomplish work at home. They further allege that the District's ticketing diminishes the value of their property and makes the property less attractive to potential buyers.

Plaintiffs' second amended complaint contains four claims against the District. First, they contend that the District's repeated ticketing of their legally parked cars constitutes an unlawful taking of their property. Second, they allege that the District's action violates 42 U.S.C. § 1983. Third, they contend the ticketing constitutes a nuisance. Fourth, plaintiffs claim the District has committed trespass by entering upon their property to issue the tickets.

Plaintiffs seek an injunction to prevent the District from interfering with their right to park their automobiles on their own property, and from interfering with their right to use and enjoy their land in any lawful manner. Plaintiffs also seek damages in the amount of $10,000 and an award of fees and the costs of this lawsuit.

### Discussion

#### Takings Claim

■ The Fifth Amendment states in part that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." The law requires an ad hoc inquiry to determine if a taking has occurred. Several factors are important, including the nature of the governmental action and its impact on the property owner, particularly the extent to which the action interferes with the investment-backed expectations of the property owner. *See, e.g., Kaiser Aetna v. United States*, 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979); *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2658–59, 57 L.Ed.2d 631 (1978).

■ Plaintiffs contend that the District's repeated ticketing of automobiles parked on their private property interferes with plaintiffs' right to use their property in any lawful manner, and constitutes a taking of that property. (Second Amended Complaint, at 5–6.) The Court finds that the ticketing is not an unconstitutional taking despite the District's physical invasion of plaintiffs' property because the invasion is neither permanent nor does it prevent plaintiffs from the reasonable use of their property. Moreover, the economic injury plaintiffs claim does not interfere with any investment-backed expectation of property rights.

#### Nature of the Governmental Action

■ Agents of the District enter plaintiffs' land temporarily, for the express purpose of issuing parking tickets. Plaintiffs contend that the actual physical intrusion on property can be minimal and still constitute a taking. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435, 102 S.Ct. 3164, 3175–76, 73 L.Ed.2d 868 (1982) (contesting a government regulation which required a property owner to allow a cable company to install cable equipment on her property). However, the physical intrusion in *Loretto* was permanent. The District's actions in this case are not a permanent physical occupation of plaintiffs' property. Therefore, the physical invasion of plaintiffs' property does not amount to a *per se* taking. *See PruneYard Shopping Center v. Robins*, 447 U.S. 74, 84, 100 S.Ct. 2035, 2042, 64 L.Ed.2d 741 (1980).

#### Impact on Property Owner

■ Temporary limitations on the owner's property rights are subject to a balancing analysis which focuses on the extent to which the property owner is deprived of the

use of his land. *Loretto*, 458 U.S. at 435 n. 12, 102 S.Ct. at 3175–76 n. 12. To amount to an unconstitutional taking, the temporary invasion must deprive the landowner of the reasonable use of his property. *See First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 318, 107 S.Ct. 2378, 2387–88, 96 L.Ed.2d 250 (1987). Plaintiffs have not been deprived of the reasonable use of their property. The District's ticketing has not prevented plaintiffs from residing at their home, nor has it prevented them from using the alley as a parking lot.

■ Plaintiffs contend that the District's actions cause them inconvenience which impedes their enjoyment of their property rights. However, "not every destruction or injury to property by governmental action has been held to be a 'taking' in the constitutional sense." *Armstrong v. United States*, 364 U.S. 40, 48, 80 S.Ct. 1563, 1568, 4 L.Ed.2d 1554 (1960). Plaintiffs rely on several cases which hold that a governmental action which causes inconvenience amounts to a taking. *See United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) (finding taking by government planes flying over plaintiff's land which prevented plaintiff from using his property as a chicken farm); *Eyherabide v. United States*, 345 F.2d 565 (Ct.Cl.1965) (finding taking due to government operation of a gunnery range located adjacent to plaintiffs' property which caused physical damage to the property and caused the residents to move). Although there are similarities between those cases and the present one, the harm suffered by plaintiffs in the present case is markedly less severe. Crucial to the holdings in *Causby* and *Eyherabide* was that the governmental action destroyed the landowner's ability to use the land for its intended purpose. A temporary invasion is defined as a taking when it substantially deprives plaintiff of the benefit of the land. *See Eyherabide*, 345 F.2d at 569. The District's ticketing may cause plaintiffs substantial inconvenience, but because plaintiffs are not prevented from continuing to use their property as they always have, the District's action is not a taking.[5]

*Diminution in Value*

■ Plaintiffs also allege that the economic impact of the District's ticketing amounts to an unconstitutional taking. Plaintiffs claim that the availability of unimpeded parking in the alley would increase the value of plaintiffs' home by approximately $20,000. (Affidavit of Nancy Burr, at 4.) However, it is contended, the District's practice of ticketing parked cars makes the property less attractive to prospective buyers and the expected increase in value is diminished. *Id.* Plaintiffs are unable to produce a quantifiable figure estimating this diminution in property value, but even a complete elimination of the anticipated $20,000 bonus does not substantially interfere with plaintiffs' distinct, investment-backed expectations. Plaintiffs Szymkowicz and Savit bought the property in question in 1977, at which time the alley was public property, and they were not entitled to use it for parking. Plaintiffs Koster and Hochman purchased the property with knowledge of the ticketing problem. Therefore, the diminution in property value which plaintiffs allege is not a reduction from what they expected the property would be worth when they bought it, and does not substantially interfere with their investment-backed expectations. *Cf. Lucas v. South Carolina Coastal Council*, —— U.S. ——, ——, 112 S.Ct. 2886, 2899, 120 L.Ed.2d 798 (1992) (noting that " 'takings' jurisprudence ... has traditionally been guided by the understandings of our citizens regarding the content of ... the 'bundle of rights' that they acquire when they obtain title to property"); *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 100 S.Ct. 383, 391, 62 L.Ed.2d 332 (1979) (noting that plaintiffs had invested considerable expense and effort in developing marina to which they reasonably believed they could control access).

■ Plaintiffs Szymkowicz and Savit also contend that they accepted an offer below their expectations when they sold the property in part because they feared that no one

---

5. Plaintiffs contend that the use of their property is impeded because of the fear of parking tickets' being issued, but there is no evidence that plaintiffs ever stopped using the alley for parking.

would be interested in buying their property. (Affidavit of Marvin Szymkowicz, ¶¶ 4, 6.) Plaintiffs do not show any causal connection between the District's actions and the sale price. There is no evidence that plaintiffs otherwise would have received more favorable offers. The Court finds the estimated anticipation of gains too speculative to conclude that a taking has occurred. *Cf. Andrus v. Allard*, 444 U.S. 51, 66, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1979) (holding plaintiff's loss of future profits too uncertain a basis on which to rest a takings claim).

### 42 U.S.C. § 1983 Claim

There are two essential elements to a claim under 42 U.S.C. § 1983. First, the conduct complained of must have deprived plaintiffs of rights, privileges, or immunities secured by the Constitution or laws of the United States. Second, the conduct must have been committed under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Plaintiffs attempt to support their § 1983 claim by alleging their Fifth Amendment rights have been violated.

 Plaintiffs contend that they have been deprived of their property without due process. Each time plaintiffs challenged a ticket it was rescinded, and at least on one occasion, a fine they had paid and subsequently protested was eventually returned to them, albeit six months later. Plaintiffs argue that the rescission procedures are insufficient to protect their rights because the ticketing itself causes a detriment by forcing plaintiffs to prove their property rights after each ticket. Moreover, plaintiffs claim that greater vigilance on the part of the District

could prevent the problem. The Court has already concluded that the District's actions did not result in a taking of plaintiffs' property.[6] Since the Court does not find a taking, plaintiffs' Fifth Amendment rights have not been violated and it is not necessary to determine if the procedures established by the District to contest parking tickets satisfy due process. *Cf. Parratt*, 451 U.S. at 537, 101 S.Ct. at 1914 (finding a deprivation of property, the Court continued its analysis to decide whether the deprivation occurred without due process). Therefore, the District's actions did not deprive plaintiffs of any constitutionally or federally guaranteed right and it is not necessary for the Court to decide whether the ticketing occurred under color of District law. *Id.* at 535.

### Nuisance and Trespass Claims

Since this Court has concluded that summary judgment should be entered for defendant on the two federal question claims, the Court dismisses without prejudice plaintiffs' common law claims for lack of subject matter jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (stating that if the federal claims are dismissed before trial the court should dismiss the state claims as well).[7] Neither common law claim contains a federal question and the parties to this action are not diverse.

### Conclusion

Therefore, this Court finds that the District did not take plaintiffs' property in violation of the Fifth Amendment and that the District is not liable for damages under 42 U.S.C. § 1983. Accordingly, the Court grants defendant's motion for summary judgment as to Count II and dismisses Count I

---

**6.** In addition, the Court need not decide if a deprivation short of a taking is entitled to due process. Assuming that plaintiffs suffered some injury to property because of the District's action, there is no allegation that it was caused by anything but negligence on the District's part. In *Daniels v. Williams*, the Supreme Court held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986)

(emphasis in original). Therefore, under *Daniels*, the injury does not amount to a deprivation entitled to due process. *Id.* at 330, 106 S.Ct. at 664.

**7.** Plaintiffs urge this Court to follow the procedures set forth in *Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768, 778 (D.C.Cir.1982). The Court finds that the circumstances of this case are distinguishable from those in *Metzger* and, in any event, declines to follow that course.

without prejudice for lack of subject matter jurisdiction.